No. 20,127.

LEO PARRISH, ET AL., v. INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(379 P. [2d] 384)

Decided March 4, 1963.

Mr. C. HAMILTON EVANS, Miss MARGARET R. BATES, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE judgment here for review is from an order of the Industrial Commission granting Nancy Mullis permanent partial disability of 5% for a back injury. We will refer to the parties as the employers, claimant, referee and the commission.

It appears that the claimant and her husband entered into a contract with the employers to manage their motel in Boulder, Colorado. The contract was to run for one year, from May 1, 1959, to May 1, 1960, and provided that both the husband and wife jointly would be paid $200.00 a month plus living quarters valued at $50.00 per month. In addition, they were to receive a 10% bonus for any profit made by the motel in excess of $24,000.00 gross at the end of the full contract period.

The latter point, however, is not involved in this proceeding because claimant and her husband did not complete their contract.

The record discloses that as early as 1956 or 1957 claimant, who was then a nurse, had had pains in her back from lifting a patient. She terms the resulting pain "sciatica" but there is no evidence of continuing difficulty from this episode.

Claimant and her husband began work for the employers in May of 1959. In July 1959 she injured her back while at work moving a bed and turning a mattress; being able to tolerate the pain therefrom she continued working. Then in August of that year claimant fell and injured her back while watering the motel lawn. She was hospitalized twice for this second accident and spent some other time in bed as a result of her injury. Finally, in October 1959 she slipped and fell while cleaning a bathtub at the motel. This last accident required new hospitalization and traction. In December 1959 claimant and her husband were discharged by the employers and in January of 1960 she filed a claim for compensation for the back injury which she alleged was incurred from her August 1959 fall.

After the claim was filed it was learned that the employers did not carry Workmen's Compensation insurance. They alleged as a defense before the referee that they employed less than four persons and need not carry such insurance. The referee, however, ruled adversely to them and they did not raise the issue again.

During the hearing before the referee two doctors were called to testify. The claimant called a practicing internist, Dr. Frederick U. Timms, who testified that the claimant received a back injury as a result of her fall. Her hospitalization for this injury was under the care of both Dr. Timms and an orthopedic specialist, Dr. Kenneth Olshausen, who acted as a consultant. We note that Dr. Olshausen was not available to testify at

the time of the hearing. Dr. Timms testified that the claimant was 25% partially disabled. He was not asked if there was any permanent partial disability.

Dr. Daniel G. Hanson, an orthopedic surgeon, testified on behalf of the employers. He had examined the claimant at their request. He stated that there was a back injury but he was unable to tell how much of this injury was due to this accident and how much to any previous back injury or condition. Dr. Hanson rated the claimant at 5% permanently partially disabled.

Extensive testimony was taken to determine whether the employers had hired both claimant and her husband or whether the salary paid was for the claimant alone, inasmuch as her husband was employed elsewhere on a 40-hour-per-week job. The memorandum contract entered into by the parties was introduced in evidence. It used the term "managers" and enumerated the duties "they" would be responsible for. There seems no doubt but that the nature of the work would require a man's assistance. And, claimant herself testified to a division of work between her husband and herself. In addition, there was correspondence introduced which stated that one of the reasons why the previous managers were being let go was that the husband was no longer at the motel and some of the work required a man's presence.

At the conclusion of the hearing the referee found "that claimant's average weekly wage at the time of this accident was $55.38 per week" and entered his order in regard thereto as follows:

"IT IS, THEREFORE, ORDERED: That respondents herein pay compensation to claimant at the rate of $55.38 per week (rate increased 50% for failure to insure) beginning * * * and continuing until the total sum of $4,378.68 has been paid, for and on account of permanent partial disability."

The employers were also ordered to pay specified hospital and medical expenses arising out of the accident.

Following the referee's award employers petitioned

the commission for reversal and failing there sought review in the district court where the award was affirmed. This writ of error followed.

Employers urge two grounds for reversal: (1) that the award should not have been for 5% permanent partial disability when it was shown that the claimant had a previous back condition or injury; and (2) that the referee failed to determine which portion of the contract salary paid belonged to claimant and which part to her husband.

As detailed above, Dr. Timms testified on behalf of claimant that she then had a 25% partial disability. And, the employers' evidence was that claimant had a 5% permanent partial disability. Neither Dr. Timms nor Dr. Hanson allocated any part of her injury to any previous condition or injury. Dr. Timms was not asked to do so; and, Dr. Hanson's testimony was that " * * * I cannot state with certainty whether her current disability represents an aggravation of a pre-existing problem or of a problem related to her most recent repeated injuries."

In *Mathews v. Ind. Com.*, 144 Colo. 146, 355 P. (2d) 300 (1960), where the medical evidence was that claimant had a prior back condition and suffered a 15% disability at the time of the hearing, it was held to be error to allocate any portion to the prior congenital condition where the doctor could only do it " * * * on a somewhat *arbitrary* basis." The court stated in *Mathews* that such testimony "is not evidence having sufficient probative value to justify an award of only 4% disability where the commission had already determined that the resulting disability would be 8%."

It follows that in the instant case it was not error for the commission to refuse to allocate any portion of claimant's 5% disability to any alleged prior back condition or injury since there is no evidence of what that percentage should be and it could only be done on an arbitrary basis.

As to the second ground urged for reversal, however, error occurred.

■ The evidence overwhelmingly shows that claimant and her husband were hired as a couple. In such a case the law is that claimant should be allowed to recover, only an amount based upon what she alone earned. *Spanick v. Glantz, et al.,* 205 N.Y.S. 299, 209 App. Div. 255 (1924).

■ In *Crawford, et al., v. Ind. Com., et al.,* 71 Colo. 378, 206 Pac. 1073 (1922), it was stated that a referee should make specific findings of fact on what he bases his award so that a reviewing court may determine whether it was proper. This rule was not followed in the instant case as to what specific percentage of the $200.00 per month salary and $50.00 for living quarters belonged to claimant for her services and what part to her husband.

The judgment is affirmed as to the award of the 5% permanent partial disability but is reversed and remanded with directions to the trial court to vacate its judgment as to the amount of the award and to order the commission to determine the correct apportionment of wages between claimant and her husband and to enter an award based thereon.

MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.